IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE SEARCH AND SEIZURE OF A BLUE APPLE IPHONE CELLULAR DEVICE, A GRAY SAMSUNG CELLULAR DEVICE AND A BLACK SAMSUNG CELLULAR DEVICE CURRENTLY LOCATED AT THE DEA SLCDO, 2570 W. 1700 S., SALT LAKE CITY, UT | Case No. 2:23mj590 CMR |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Brittani Wingert being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been employed in this capacity since December 2020. I have received extensive training and have Title 21 authority to investigate and enforce violations of the Controlled Substance Act and the Controlled Substances Import and Export Act. I have over 13 years of law enforcement experience as an Investigative Assistant, Intelligence Analyst and a Diversion Investigator with DEA, where I participated in many investigations relating to violations of Title 21 United States Code § 841(a)(1), Distribution and Possession with Intent to Distribute a Controlled Substance, Title 21 United States Code § 843(b), Unlawful Use of a Communication Facility and Title 21 United States Code § 846, Conspiracy to Distribute and Conspiracy to Possess with Intent to Distribute a Controlled Substance.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

3. The property to be searched is a blue Apple iPhone cellular device, a gray Samsung cellular device and a black Samsung cellular device belonging to Miguel Antonio SOTELO-Valencia, hereinafter the "Mobile Devices". The Mobile Devices are currently located at the DEA SLCDO, 2570 W. 1700 S., Salt Lake City, UT 84104.

4. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

5. As set forth in more detail below, I believe that the electronically stored information described in Attachment B is recorded on the Mobile Devices described in Attachment A, and are likely to contain evidence of the facilitation of narcotics distribution.

6. As part of an ongoing Federal narcotics trafficking and distribution investigation, that began in October 2022, Miguel Antonio SOTELO-Valencia ("SOTELO") was identified as a fentanyl, heroin and cocaine source of supply in violation of Title 21 United States Code § 841(a)(1), Distribution and Possession with Intent to Distribute a Controlled Substance; Title 21 United States Code § 843(b), Unlawful Use of a Communication Facility; Title 21 United States Code § 846, Conspiracy to Distribute and Conspiracy to Possess with Intent to Distribute a Controlled Substance (SUBJECT OFFENSES). Through federal T-III intercepts in this investigation, agents discovered SOTELO utilized cellular telephones to communicate with narcotics redistributors to facilitate narcotics transactions. This is a joint investigation to include members of the DEA MetroNarcotics Task Force (MNTF) and Utah County Major Crimes Task Force (UCMC).

7. Based on information and evidence gained through this investigation thus far, including controlled purchases of fake Oxycodone 30mg tablets (containing fentanyl) and heroin from DOBLADO-Navarro, the Honorable Robert J. Shelby, United States District Judge in the District of Utah, signed an order (2:23sc41), under seal, authorizing the interception of wire and electronic communications to/from DOBLADO-Navarro (TD1) on February 13, 2023. That order authorized agents to monitor that device for a period of thirty (30) days, and included a pen trap and trace, which allowed agents to see call transactions in real-time; more simply stated, it allowed agents to see the phone numbers in contact with the respective target device as the calls are made. Agents began intercepting/monitoring communications on February 13, 2023.

8. The information below details intercepted communications between DOBLADO-Navarro and TD2, which was used by SOTELO.

9. On February 15, 2023, at approximately 7:12 PM, agents intercepted an outgoing call (session 313) on TD1 between DOBLADO-Navarro and SOTELO (TD2). During that conversation, SOTELO told DOBLADO-Navarro "Acabo de terminar mil (1000)", that he had just finished 1000. DOBLADO-Navarro told SOTELO to call him through the phone because he wasn't using WhatsApp.

10. On February 15, 2023, at approximately 7:28 PM, agents intercepted an incoming text message (session 323) on TD1 between DOBLADO-Navarro and SOTELO (TD2). SOTELO sent text message, "Pana q pedo" (What's up buddy).

11. On February 15, 2023, at approximately 7:28 PM, agents intercepted an incoming text message (session 324) on TD1 between DOBLADO-Navarro and SOTELO (TD2). SOTELO sent message, "No suena" (It doesn't ring).

12. On February 15, 2023, at approximately 7:34 PM, agents intercepted an outgoing

text message (session 328) on TD1 between DOBLADO-Navarro and SOTELO (TD2). DOBLADO-Navarro sent message, "Q ondas" (What's up).

13. On February 15, 2023, at approximately 7:34 PM, agents intercepted an outgoing call (session 330) on TD1 between DOBLADO-Navarro and SOTELO (TD2). During that conversation, SOTELO asked DOBLADO-Navarro where to meet. DOBLADO-Navarro replied, "Aca mismo, donde me mira siempre" (Right here, where you always see me.). SOTELO asked, "Ahi en su canton?" (Over there at your house?). DOBLADO-Navarro stated he also needed cocaine, "el perico". SOTELO stated, "Tamvien media?" (Also a half?). DOBLADO-Navarro stated yes.

14. On February 15, 2023, at approximately 8:02 PM, agents intercepted an incoming call (session 331) on TD1 between DOBLADO-Navarro and SOTELO (TD2). During that conversation, SOTELO told DOBLADO-Navarro that he was there. DOBLADO-Navarro asked SOTELO, "Dele…Trae del, del [U/I] el otro?" (Give…Do you have the, the other one?). SOTELO stated "Si, si. Traje de, de la otra" (Yes, yes. I brought the other one).

15. On February 21, 2023, at approximately 9:26 AM, agents intercepted an incoming call (session 939) on TD1 between DOBLADO-Navarro and SOTELO (TD2). During that conversation, SOTELO advised DOBLADO-Navarro that he was getting ready to go to DOBLADO-Navarro's apartment so DOBLADO-Navarro could be ready later. SOTELO told DOBLADO-Navarro "son las tres mil…" (It's three thousand), "…una Morena, media de blanco, un ocho de blanco" (one brown, half of white and an eight of white). SOTELO asked DOBLADO-Navarro, nothing else, "Y nada mas", to which DOBLADO-Navarro stated yes.

16. On February 21, 2023, at approximately 10:02 AM, agents intercepted an incoming call (session 941) on TD1 between DOBLADO-Navarro and SOTELO (TD2). During that

conversation, SOTELO told DOBLADO-Navarro, "Aqui vengo llegando, pana" (I am arriving now, buddy). DOBLADO-Navarro responded, "Dale pues. Ahorita llego ahi" (Sounds good. I will be right there).

17. On February 21, 2023, at approximately 10:05 AM, agents observed during surveillance a male previously identified as DOBLADO-Navarro exit his known apartment and walk through the apartment complex. Based on the call intercepted above (session 941), agents believe DOBLADO-Navarro was walking to meet with SOTELO. Agents were not able to follow DOBLADO-Navarro on foot through the apartment complex.

18. On February 23, 2023, a search warrant (2:23mj165-CMR) was obtained which authorized the use of a cell-site simulator in order to identify the location of TD2 utilized by SOTELO.

19. On March 3, 2023, agents were able to verify the presence of TD2 at 4955 W. Ticklegrass Rd., West Jordan, UT.

20. On March 6, 2023, at approximately 11:10 AM, agents observed DOBLADO-Navarro exit his apartment and get into the passenger side of a Jeep Grand Cherokee, Utah license plate T075DX occupied by a male driver. Agents observed DOBLADO-Navarro exit the vehicle. The registered owner (RO) of the Jeep Grand Cherokee bearing Utah license plate T075DX was Brenda PORTILLO, residing at 4955 W. Ticklegrass Road, West Jordan, Utah. From prior intercepts over TD1 with TD2 and surveillance, agents believe SOTELO was the driver of the Jeep Grand Cherokee, and also the narcotics source of supply for DOBLADO-Navarro.

21. On March 6, 2023, the Honorable Robert J. Shelby, United States District Judge in the District of Utah, signed an order (2:23sc59), under seal, authorizing the interception of wire and electronic communications to/from SOTELO (TD2).

22. On March 6, 2023, at approximately 4:36 PM, agents intercepted an incoming call (session 1) from UM3295 to SOTELO. UM3295 asked SOTELO if he wanted to work. SOTELO said yes and asked where to meet. UM3295 told SOTELO he would send an address and asked SOTELO how much he wanted. SOTELO and UM3295 agreed one "little corn tamal". Agents know "work" as a reference to narcotics and distributing narcotics. Agents also know "tamal" is a reference to an ounce of cocaine. Through additional intercepts, SOTELO and UM3295 discussed meeting at a location in the Salt Lake City area.

23. On March 9, 2023, agents stopped receiving intercepts from TD2 and believed SOTELO "dropped" or stopped using the phone. It is common practice for narcotics distributors to frequently change phone numbers or use different phones as a way to conceal narcotics distribution activities.

24. On May 16, 2023, the Honorable Jared C. Bennett, United States District Magistrate Judge in the District of Utah authorized an arrest warrant for SOTELO, as well as four other DTO members.

25. On May 19, 2023, agents executed the arrest warrant for SOTELO. Agents observed SOTELO sitting in a chair inside his open garage at his residence located at 4955 W. Ticklegrass Rd., West Jordan, UT. Agents approached SOTELO, verified his identify and took him into custody. In SOTELO's possession was a black Samsung cell phone and a gray Samsung flip cell phone (Mobile Devices). Agents asked SOTELO's girlfriend, Brenda Portillo, for consent to search a Jeep Grand Cherokee, Utah license plate T075DX, registered in her name. SOTELO had been observed utilizing the Jeep Grand Cherokee to conduct narcotics transactions as referenced in paragraph 20. Brenda Portillo gave agents verbal consent to search the Jeep Grand Cherokee. Agents found a blue Apple iPhone (Mobile Device), which Portillo stated was not hers.

SOTELO was booked into Salt Lake City Metro Jail.

26.     The Mobile Devices are currently located in DEA custody, 2570 W. 1700 S., Salt Lake City, UT 84014. In my training and experience, I know that the Mobile Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Mobile Devices first came into the possession of the DEA.

## TECHNICAL TERMS

27.     Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the

location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved

    in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of

    four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  28. Based on my training, experience, and research, I know that "smartphones" like the Mobile Device have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

  29. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

  30. *Forensic evidence.* As further described in Attachment B, this application seeks

permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    h. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    i. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    j. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    k. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    l. Further, in finding evidence of how a device was used, the purpose of its use, who

used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

31. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

32. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

33. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Mobile Devices described in Attachment A to seek the itemsdescribed in Attachment B.

Respectfully submitted,

*/s/ Brittani Wingert*
BRITTANI WINGERT
Special Agent
DEA

Subscribed and sworn to me by reliable electronic means on June 20th, 2023:

*Cecilia M. Romero*
CECILIA M. ROMERO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a blue Apple iPhone cellular device, a gray Samsung cellular device and a black Samsung cellular device currently in DEA custody at 2570 W. 1700 S., Salt Lake City, UT 84104.".

This warrant authorizes the forensic examination of the Mobile Devices for the purpose ofidentifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Mobile Devices described in Attachment A that relate to violations of Title 21 United States Code § 841(a)(1), Distribution and Possession with Intent to Distribute a Controlled Substance; Title 21 United States Code § 843(b), Unlawful Use of a Communication Facility and Title 21 United States Code § 846, Conspiracy to Distribute and Conspiracy to Possess with Intent to Distribute a Controlled Substance, and involve Miguel Antonio SOTELO-Valencia since February 2023, including:

   a. information and communications documenting drug and money laundering activities. Communications between coconspirators known and unknown discussing the drug and money laundering conspiracy which may be documented in emails, drafts, notes, applications, text messages, and other means of communication.

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. any information recording TORRES' schedule or travel from October 1, 2020, tothe present;

   f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Mobile Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.